**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) GREG CARLISLE,** | ) | |
| **Plaintiff,** | ) | CIV-18-775-M |
| **vs.** | ) | |
| **(1) CREDIT SERVICE, INC. DBA CSI GROUP,** | ) | **COMPLAINT** **(Unlawful Debt Collection Practices)** |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, Greg Carlisle, and for a Complaint against Defendant, Credit Service, Inc. dba CSI Group, alleges as follows:

## INTRODUCTION

1. Plaintiff states a claim against Credit Service, Inc. dba CSI Group for violation of the Fair Debt Collection Practices Act, codified 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which was enacted in 1978.

2. Congress stated its findings and purpose of the FDCPA:

(a) **Abusive practices**

> There is *abundant evidence* of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) **Inadequacy of laws**

> Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) **Available non-abusive collection methods**

> Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) **Interstate commerce**

> Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) **Purposes**

> It is the purpose of this title to *eliminate* abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## JURISDICTION AND VENUE

3. Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy.

4. Defendant conducts business in the state of Oklahoma; therefore, personal jurisdiction is established.

5. Venue is proper pursuant to 28 U.S.C. 1391(b)(2).

## STANDING

6. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

7. Specifically, Plaintiff suffered a concrete injury to reputation as a result of Defendant's communication of false information to third parties in connection with its attempt to

collect an alleged debt from Plaintiff, and exposed Plaintiff to a real risk of financial harm caused by an inaccurate credit rating.

## PARTIES

8. Plaintiff is a natural person who resides in Oklahoma County, Oklahoma.

9. Plaintiff is a consumer as that term is defined by 15 U.S.C. 1692a(3), and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by 15 U.S.C. 1692a(5).

10. Defendant is a debt collector as that term is defined by 15 U.S.C. 1692a(6), and sought to collect a consumer debt from Plaintiff.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant is a collections business with an office in Oklahoma City, Oklahoma.

12. Upon information and belief, Defendant uses interstate mail, reports to consumer credit reporting agencies and makes telephone calls to consumers attempting to collect on defaulted consumer debt.

13. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

14. In February, 2017, Defendant noticed an inaccurate item reported by Defendant as a defaulted consumer medical debt from OPM LLC on his personal credit report that had been added by Defendant.

15. On or about February 22, 2017, Plaintiff placed a call to Defendant to discuss the alleged debt. Plaintiff advised Defendant's representative that his insurance company had already paid for the debt. Defendant's representative voiced her understanding of Plaintiff's dispute and told Plaintiff to wait on the line while she gathered documentation regarding Plaintiff's account. She however immediately came back information on the line without obtaining any information

and told Plaintiff what she expected that the account would show and directed Plaintiff to call his insurance company. Upon information and belief, during this conversation or immediately after this conversation, Defendant marked its file "DBT STATES INS PD," which is believed to be shorthand for "*Debtor States Insurance Paid*."

16. Despite having notated his account that Plaintiff reported that his insurance had already paid the account, on March 1, 2017, and at least once a month thereafter, Defendant reported the debt to Plaintiff's credit reports, but failed to communicate that the debt had been disputed by the consumer Plaintiff in violation of 15 U.S.C. §1692e(8). *See Carter v. Credit Bureau of Carbon Cty.*, No. 1:14-cv-00873, 2015 WL 4450698, at *2-3 (D. Colo. July 20, 2015) (holding that a that a consumer's insistence that her insurance should have paid the debt constituted a "dispute.").

17. On March 6, 2018, Plaintiff placed a second call to Defendant to again discuss the alleged debt. During this call Plaintiff again advised Defendant that Plaintiff disputed the amount of the alleged debt being sought by Defendant and told Defendant's representative the correct amount of the debt was $25.00, the amount of his deductible. In response, Defendant's employee debt collector told Plaintiff that he understood that Plaintiff disagreed with the amount but told Plaintiff that the reason the amount Defendant sought to collect was higher was that a "30% collection fee" applied. However, this was a false statement as the OPM LLC Financial Policy provided only a 21% fee. Specifically, the agreement creating the debt stated: "If your account has to be sent to a collection agency, additional fees will be incurred. Due to the costs associated with setting up this account, we will add an additional 21% fee to your account." Accordingly, as the agreement creating the debt did not provide for a 30% collection fee, and the statement

told Plaintiff that such an amount applied to Plaintiff's account was falsely made with the intent to induce a payment by Plaintiff.

18. On March 30, 2018, despite the two calls made by Plaintiff disputing the debt, Defendant again reported the debt to Plaintiff's credit reports, but failed to communicate that the debt was disputed by the consumer Plaintiff.

19. On May 1, 2018, Defendant again reported the alleged debt to Plaintiff's credit reports, but again failed to communicate that the consumer Plaintiff disputed the debt.

20. On June 1, 2018, Defendant again reported the alleged debt to Plaintiff's credit reports, but again failed to communicate that the consumer Plaintiff disputed the debt.

21. On July 3, 2018, Defendant again reported the alleged debt to Plaintiff's credit reports, but again failed to communicate that the consumer Plaintiff disputed the debt.

22. Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

23. Defendant materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute.

24. A debt reported without dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

25. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of**

> **the foregoing, the following conduct is a violation of this section: . . .**
>
> **(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

26. On February 22, 2017, Defendant knew that Plaintiff had disputed the alleged debt and had updated Plaintiff's file notes that Mr. Carlisle stated that his insurance had paid. However, when it reported Plaintiff's account to the credit reporting agencies (which has occurred at least monthly since February 22, 2017), Defendant failed to report that the debt had been disputed by Plaintiff, in violation of 15 U.S.C. § 1692e(8). *See Dixon v. RJM Acquisitions, LLC*, 640 F. App'x 793 (10th Cir. 2016) (holding that a phone call from the consumer raised a genuine fact issue of whether the debt was disputed, which precluded summary judgment for the debt collector).

27. Even though Plaintiff knew and had notated its file that Plaintiff disputed owing the amount of the alleged debt, Defendant failed to communicate the fact of Plaintiff's dispute to the credit reporting agencies to which Defendant communicated other information regarding the alleged debt, in violation of 15 U.S.C. § 1692e(8). *See Carter v. Credit Bureau of Carbon Cty.*, No. 1:14-cv-00873, 2015 WL 4450698, at *2-3 (D. Colo. July 20, 2015) (holding that a that a consumer's insistence that her insurance should have paid the debt constituted a "dispute.").

28. Plaintiff has suffered actual damages as a result of these illegal collection communications by Defendant in the form of a lower credit score, and experienced anger and frustration, amongst other negative emotions.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT, (FDCPA), 15 U.S.C. § 1692 et seq.

29. Defendant violated §1692e(8) of the FDCPA by failing to communicate that a disputed debt is disputed to Plaintiff's credit reporting bureaus.

30. Defendant violated §1692e(2)(A) of the FDCPA by falsely representing the character of the alleged debt in telling Plaintiff that a 30% collection fee applied to his account, when a 30% collection fee did not actually apply.

31. Defendant violated §1692f(1) of the FDCPA by the attempted collection of a 30% collection fee when no such amount was expressly authorized by the agreement creating the debt or permitted by law as the agreement creating the debt only provided for "an additional 21%" to be added to Plaintiff's account.

**WHEREFORE**, Plaintiff, Greg Carlisle, respectfully prays that judgment be entered against Defendant, Credit Service, Inc. dba CSI Group, for the following:

a) Statutory damages of $1,000.00, pursuant to the FDCPA, 15 U.S.C. 1692k;

b) Actual damages pursuant to the FDCPA, 15 U.S.C. 1692k;

c) Costs and reasonable attorney's fees pursuant to the FDCPA, 15 U.S.C. 1692k; and

d) Any other relief that this court deems to be just and proper.

Respectfully submitted,

/s/ Victor R. Wandres
Victor R. Wandres, OBA #19591
PARAMOUNTLAW
CONSUMER PROTECTION FIRM
4835 S. Peoria Ave., Suite 1
Tulsa, OK 74105
(918) 200-9272 voice
(918) 895-9774 fax
5264@paramount-law.net